1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAVID TROUPE,

Plaintiff,

v.

DONNA SMITH, et al.,

Defendants.

No. C15-5671 RBL-KLS

**REPORT AND RECOMMENDATION**
**Noted for:  October 7, 2016**

Plaintiff David Troupe filed this 42 U.S.C. § 1983 civil rights lawsuit on September 18, 2015.  He originally alleged that fifteen staff members at the Washington Corrections Center (WCC) violated his Eighth Amendment rights: (1) during his placement in the WCC infirmary on August 2, 2014; (2) by videotaping him in the shower and while using the toilet, and (3) failing to properly respond to an incident of self-harm on September 4, 2014.

Defendants Donna Smith, Scott Russell, Eric Wirt, Jason Martin, Scott Roberts, James Thompson (incorrectly referred to by plaintiff as " Neil Thompson"), Barbara Hutchinson, Patricia Paterson, Dean Mason, Edward Woods, Steven DeMars, Crystal Jennings, Nancy Fernelius, Donald Griffith, and Nicole Buckingham[1] move for summary judgment on the grounds that (1) claims related to plaintiff's placement and videotaping in the infirmary are barred by the doctrine of *res judicata;* (2) plaintiff has failed to establish that ten of the

---

[1] Nicole Buckingham was dismissed as a defendant on June 17, 2016.  Dkt. 55 (Order of Dismissal).

REPORT AND RECOMMENDATION - 1

remaining fourteen defendants personally participated in the alleged constitutional violations; (3) defendants are entitled to qualified immunity; and (4) plaintiff has failed to raise a triable claim for injunctive relief.  Defendants also ask the Court to find this action frivolous and malicious. Dkt. 28.  Because defendants' motion raised issues of res judicata and qualified immunity, the Court stayed all discovery pending resolution of the motion for summary judgment.  Dkt. 38.

When plaintiff filed his response to defendants' motion on December 14, 2015, he complained that he was unable to fully respond to the motion because he had been prevented from making copies and sending legal mail and that certain relevant materials had been taken from him by DOC officials.  Dkt. 34.  The Court lifted the stay of discovery to allow Mr. Troupe to engage in discovery and more fully respond to the summary judgment motion.  Defendants' motion for summary judgment was re-noted for June 24, 2016.  Dkt. 42.  On July 18, 2016, Mr. Troupe was again granted additional time to more fully respond to the summary judgment motion.  Dkt. 62.  Two days after that extension was granted, he filed another motion for extension.  Dkt. 63.  That motion was denied.

The Court concludes that defendants' motion for summary judgment should be granted and plaintiff's claims against defendants dismissed with prejudice.

### STATEMENT OF FACTS

**A.    Placement In The WCC Infirmary**

**1.    Plaintiff's Assertions:**  Mr. Troupe alleges that on August 4, 2014, "all named Defendants participated in having [him] placed into a hospital isolation cell #28 at WCC."  Dkt. 8, at 2.  He claims that he was placed in this sensory deprivation cell even though all the defendants were aware that he has a history of mental health disorders and a history of self-harming and that the defendants hoped he would kill himself or at the very least cause himself

REPORT AND RECOMMENDATION - 2

harm.  He alleges that Defendant DeMars had a separate retaliatory reason for placing him in the infirmary.  Mr. Troupe claims that Defendant DeMars was punishing him because Mr. Troupe had discovered a DOC cover-up of Prison Rape Elimination Act (PREA) and "sexual type" problems with female staff at every DOC facility.  *Id.*, at 6.

       **2.**      **Defendants' Response:**  In August 2014, WCC staff was attempting to find new ways to manage Mr. Troupe's pattern of abusive behavior.  Dkt. 28-3 (pp. 31-33), Exhibit 4, Declaration of Dean Mason, Associate Superintendent WCC, at ¶ 3.  According to Lee Young, Grievance Coordinator at the Washington State Penitentiary (WSP), Mr. Troupe has spent a significant amount of his incarceration in DOC's most restrictive custody known as Intensive Management Status (IMS).  Mr. Troupe has displayed a pattern and practice of intentionally engaging in manipulative conduct to get attention and to obtain favorable treatment, such as housing assignment changes. Dkt. 28-3, Exhibit 3 (pp. 2-4), Declaration of Lee Young, at p. 2. This manipulative conduct includes but is not limited to, threats of self-harm, refusing to eat, refusal to take medications, threats of making accusations against staff, making false accusations against staff, and other similar tactics to attempt to manipulate the corrective facility processes and staff on a regular basis.  *Id.*, Exhibit 3, Young Decl., at p. 2.  Mr. Troupe also harasses, intimidates, and attemps to manipulate staff into providing him favorable treatment by threatening to use staff's personal information to cause them harm.  Dkt. 28-2, Exhibit 2, Thrasher Decl., at ¶ 9 -37; Dkt. 28-3, Exhibit 5 (pp. 44-46), Declaration of Steven DeMars, Chief Investigator, Intelligence and Investigating Unit (IIU), at ¶¶ 5-8.[2]

---

[2] This sworn declaration was previously filed in *Washington State DOC of Corrections and Office of Financial Management v. David Troupe*, Thurston County Cause No. 10-2-01083-9.

REPORT AND RECOMMENDATION - 3

In 2014, staff noticed that Mr. Troupe was using other inmates to gather personal information on staff and to get around no contact orders that had been placed on him. *Id.*, Exhibit 4, Mason Decl., at ¶ 3 & Attachment A (IMU/SEG/Secured Housing Security Enhancements Plan). While housed in the WCC IMU in 2014, Mr. Troupe had been disseminating personal information about staff by writing it in library books and carving it into meal trays and onto cell furnishings. This practice was part of Mr. Troupe's ongoing attempts to compromise staff by sharing their personal information with other offenders. To manage this behavior and allow mental health professionals to explore therapeutic interventions, WCC staff decided to place Mr. Troupe in a "negative pressure room" in the infirmary on August 4, 2014. According to Associate Superintendent Dean Mason, the "negative pressure room is typically used for offenders who have infections or communicable diseases, but it has also been used for offenders who require closer monitoring or greater security practices." *Id.*, Exhibit 4, Mason Decl., at ¶ 3-4.

On August 4, 2014, Mr. Troupe was placed in the negative pressure room because it was determined that the room was best suited for close observation and for the intervention strategies that had been developed in response to Mr. Troupe's behavioral issues. *Id.*, Exhibit 4, Mason Decl., at ¶ 4-5. Mr. Troupe was housed in the infirmary from August 4, 2014 until September 30, 2014, during which time he was treated as an IMU offender.

**B.    Cameras in Negative Pressure Room**

**1.    Plaintiff's Assertions:** Mr. Troupe claims that while he was in the infirmary, he was videotaped in the shower and while urinating and defecating in his cell toilet, and that the videotaping was done for the purpose of humiliating and punishing him for his active litigation against DOC, and for defendants' own sexual gratification.   Dkt. 8, at 2.

REPORT AND RECOMMENDATION - 4

2.    **Defendants' Response:**  Because WCC is a correctional facility, there are cameras throughout the facility.  *Id.*, Exhibit 4, Mason Decl., at ¶ 6.  The cameras in the negative pressure room were installed in the room before Mr. Troupe was housed there and no cameras were added to the room after he was housed there. *Id.*, Exhibit 4, Mason Decl., at ¶ 6.

After Mr. Troupe raised concerns about the cameras on August 14, 2014, the camera in the shower area was turned off.  Dkt. 28-3 (pp. 31-33), Exhibit 4, Mason Decl., at ¶ 6; Dkt. 28-3, Exhibit 6, (pp. 67-69) Declaration of Dale Caldwell, Grievance Program Manager, Attachment C, at 77 (Grievance Log ID 14568922).  In his grievance, Mr. Troupe complained of the two video cameras in the infirmary cell – one that showed his toilet and the other that showed his shower.  He asked that the camera which showed his shower be turned off during his shower times.  Dkt. 28-3, Caldwell Decl., at 77.  This request was granted and Mr. Troupe was advised of that determination on August 19, 2014.  *Id.*  Mr. Troupe did not appeal that determination. Dkt. 28-3, Caldwell Decl., at 3.

Also, according to Mr. Mason, staff have access to the video footage and recordings if there is an incident.  He never viewed any of the recorded video footage and does not know of anyone else who viewed the footage.  *Id.*, Exhibit 4, Mason Decl., at ¶ 6.  There is no evidence any video footage was viewed by anyone for any reason.

**C.    Treatment of Self-Harm Incident – September 4, 2014**

1.    **Plaintiff's Assertions:**  Mr. Troupe alleges that on September 4, 2014, around 12:30 a.m., "Plaintiff was seen harming himself after James Thompson and Barbara Hutchinson refused Plaintiff medical treatment when he filed an emergency grievance for help." *Id.*  Mr. Troupe alleges that he filed three emergency grievances on September 4, 2014 at 12:15 a.m., 12:30 a.m., and 1:00 a.m.  He claims that James Thompson, Barara Hutchinson, Crystal

REPORT AND RECOMMENDATION - 5

Jennings, Eric Wirt, and Lt. Martin were all aware that he was self-harming and chose not to follow his IBMP which required them to put him in a restraint chair. *Id.*, at 4. He claims that Nancy Fernelious, Donald Grifith, Patricia Paterson, Edward Woods and Steven DeMars, who were on 2nd shift from 6 a.m. to 9 a.m., allowed him to continue to self-harm and refused him medical treatment; that he was provided "minimal medical treatment by Dr. Wendi Wachsmuth "and or Tammie Bartlett"; and that mental health providers Scott Roberts and Nichole Buckingham refused crisis treatment and ignored his self-harming. *Id.*, at 4-5.

2.   **Defendants' Response:**   Mr. Troupe has had a wound on his lower left leg for years. Dkt. 28-3, Exhibit 7 (pp. 79-81), Declaration of David Turner, Registered Nurse (RN), at ¶ 3; Dkt. 28-3, Exhibit 8 (pp. 104-106), Declaration of Scott Roberts, Psychology Associate, Attachment A (Individual Behavior Management Plan), at p. 1. Mr. Troupe has a history of reopening this wound. Dkt. 28-3, Exhibit 7, Turner Decl., at ¶ 3; Exhibit 8, Roberts Decl., Attachment A, at p. 1. Mr. Troupe had this wound when he was placed in the infirmary. *Id.*, Exhibit 7, Turner Decl., at ¶ 3. For example, on August 6, 2014, custody staff advised medical staff that Mr. Troupe had reopened his old wound and Mr. Troupe was placed in the restraint chair by custody staff to prevent further self-harm. *Id.*, Exhibit 7, Turner Decl., at ¶ 3. However, when RN Turner attempted to place a dressing on the wound, Mr. Troupe refused further treatment. *Id.*, Exhibit 7, Turner Decl., at ¶ 3 & Attachment A (Primary Encounter Report (PER) dated 8/6/14). The next day, on August 7, 2014, Mr. Troupe requested and received a dressing over his leg wound. *Id.*, Exhibit 7, Turner Decl., at ¶ 3 & Attachment A (PER dated 8/7/14). After staff placed the dressing on the wound, medical staff regularly monitored the wound and

replaced the dressing during the remainder of the time in the infirmary. *Id.*, Exhibit 7, Turner Decl., at ¶ 4.  The dressing on Mr.Troupe's leg was replaced regularly thereafter.[3]

In his grievances, which were made contemporaneous with the September 4, 2014 incident, Mr. Troupe described the incident as follows:

> "[M]"y dressing was bloody and needed changed both [Thompson and Hutchinson] refused so I took it off and it started bleeding. I then washed it with soap and hot water."

Dkt. 34, at p. 36.  He also grieved that "RN 1st Shift refuses me a clean dressing."  Dkt. 28-3, Exhibit 6, Caldwell Decl., Attachment B (Grievance Log ID No. 14570248).  He further stated, "I'm being accused of harming myself" and "IF I harmed myself."  *Id.*  He also complained that he had bled all over the floor for 10 hours before his dressing was changed.  *Id.*  However, the Wound Care Flow Sheet on September 5, 2014 at 10:30 a.m., indicated that the scar was still intact.  Dkt. 28-3, Exhibit 7, Turner Decl., Attachment B (Wound Care Flow Sheet, 9/5/14 entry).  A chart note dated September 5, 2013, 12:24 a.m. states that after Mr. Troupe indicated to corrections officers that he had concerns about his dressing, LPN Thompson assessed that his dressing was "intact with a quarter sized spot (illegible)."  While LPN Thompson looked at the dressing through the door, Mr. Troupe began removing the dressing.  Dkt. 28-3, at 99, Attachment C to Turner Decl.

---

[3] Specifically, staff replaced the dressing on August 8, 2014; August 9, 2014; August 10, 2014; August 11, 2014; August 12, 2014; August 13, 2014; August 14, 2014; August 15, 2014; August 16, 2014; August 17, 2014; August 18, 2014; August 19, 2014; twice on August 20, 2014; August 21, 2014; August 23, 2014; August 24, 2014; August 25, 2014; August 26, 2014; August 27, 2014; August 29, 2014; August 30, 2014; August 31, 2014; September 1, 2014; September 2, 2014; September 10, 2014; September 11, 2014; September 12, 2014; September 15, 2014; September 17, 2014; September 19, 2014; September 24, 2014; September 26, 2014.  *Id.,* Exhibit 7, Turner Decl., at ¶ 4 & Attachment C (Primary Encounter Reports for August and September 2014).

REPORT AND RECOMMENDATION - 7

In response to Mr. Troupe's grievance against Defendants Thompson and Hutchinson for allowing him to bleed all over his floor from a fresh wound and refusing to dress his wound, Mr. Troupe was advised as follows:

> This process of self harm has been historically repeated including this incident. Dressings were being checked three times a week or more if necessary per care plan. Male staff, if possible were the only ones normally being directed to have contact with the you.  It appears that the three emergency kites were just that and not patient declared emergencies and when assessed or reported were deemed non-emergent since they were non-life threatening and had no over the top uncontrolled pain associated with it.  You have removed stitches and dressing many times to get attention or, care by certain staff and this process will not achieve your desired results. Your care is carefully and thoughtfully planned and carried out, but your interference such as tearing and picking at dressings and stitches or washing the wound to open up scabbing is only causing more issues due to self harm that we cannot be held responsible for or jump in to fix immediately each and every time it happens at will. There is no negligence on the part of your caregivers but it is clear that you are interfering and complicating your care by the repeated incidents of self harm and abuse.

Dkt. 28-3, Attachment A at 71.

Mr. Troupe was also offered regular mental health care while he was housed in the infirmary.  Dkt. 28-3, Exhibit 8, p. 104, Roberts Decl., at ¶ 2.  Psychology Associate Roberts was Mr. Troupe's primary mental health provider during the time that Mr. Troupe was housed in the infirmary.  *Id.*  Mr. Roberts met with Mr. Troupe regularly.  *Id.*, Exhibit 8, Roberts Decl., at ¶ 3.  However, Mr. Troupe refused to participate in a number of sessions.  *Id.*  In August and September 2014, Mr. Troupe was placed in the restraint chair on multiple occasions when he threatened self-harm.  According to Mr. Roberts, the self-harm Mr. Troupe engaged in during this time were not lethal attempts and were not consistent with suicide.  When Mr. Troupe engaged in self-harm, Mr. Roberts would attempt to discuss the incident with Mr. Troupe in a therapy setting.  *Id.*  Mr. Roberts attempted to contact Mr. Troupe on September 4th, but Mr. Troupe was asleep and did not wake up.  *Id.*, Exh. 8, Roberts Decl., at 3, p. 105.

REPORT AND RECOMMENDATION - 8

In addition, Mr. Troupe's acts of self-harm were managed in accordance with his individual behavior management plan (IBMP). *Id.,* Exhibit 8, Roberts Decl., at ¶ 4, p. 105-106. The IBMP was developed by Mr. Roberts, along with Dr. Wendi Wachsmuth after Mr. Troupe was placed in the IMU Infirmary, to manage and treat Mr. Troupe. The IBMP seeks to prevent further self-injury by (1) placing Mr. Troupe in a restraint chair; (2) contacting mental health and medical staff; (3) assessing medical needs and providing treatment; (4) assessing need to remain in restraint chair no longer than 2 hours; (5) releasing from restraint chair when deemed appropriate and placed on modifications as articulated by mental health staff to reduce self-harm such as razor/shap restrictions, sack meals. *Id.,* Exhibit 8, Roberts Decl., Exhibit A, at p. 109.

## STANDARD OF REVIEW

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000). A nonmoving party's failure to comply with local rules in opposing a motion for summary judgment does not relieve the moving party of its affirmative duty to demonstrate entitlement to judgment as a matter of law. *Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

"If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine

REPORT AND RECOMMENDATION - 9

1   issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex*

2   *Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  The non-moving party may not rely upon mere

3   allegations or denials in the pleadings but must set forth specific facts showing that there exists a

4   genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A plaintiff

5   must "produce at least some significant probative evidence tending to support" the allegations in

6   the complaint. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).

7
                                **DISCUSSION**

8

9               To be entitled to relief under 42 U.S.C. § 1983, a plaintiff must show: (i) the conduct

10   complained of was committed by a person acting under color of state law; and (ii) the conduct

11   deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the

12   United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels*

13   *v. Williams*, 474 U.S. 327 (1986).  Section 1983 is not merely a "font of tort law." *Parratt*, 451

14   U.S. at 532.  That plaintiff may have suffered harm, even if due to another's negligent conduct,

15   does not in itself, necessarily demonstrate an abridgment of constitutional protections. *Davidson*

16
17   *v. Cannon*, 474 U.S. 344, 347 (1986).

18   **A.      Res Judicata – August 2014 Placement and Videotaping**

19               Defendants contend that Mr. Troupe's claims related to his placement and the conditions

20   in the infirmary in August 2014 are barred by res judicata. Mr. Troupe previously challenged his

21   placement in August 2014 in the WCC infirmary, and the Court dismissed such claims at

22   summary judgment in *Troupe v. Sisson, et al.*, Western District Cause No. 14-5734 RBL-KLS,

23   2015 WL 1650377 (W.D. Wash. April 14, 2015).  In that case, Mr. Troupe alleged that he was

24
25   moved to the infirmary on August 4, 2014 at the direction of Steven DeMars so that Mr. Troupe

26

REPORT AND RECOMMENDATION - 10

would be away from his witnesses in IMU and could no longer teach other inmates to file

lawsuits, public disclosure requests, and witness statements.  Dkt. 26, at 2 in Case 14-5734.

Mr. Troupe argues that res judicata does not apply here because his previous lawsuit was

based on First Amendment retaliation and did not raise any Eighth Amendment claims or claims

related to videotaping.  Dkt. 34, at 6.

Res judicata applies whenever there is (1) an identity of claims; (2) a final judgment on

the merits; and (3) identity or privity between the parties.  *See Owens v. Kaiser Found. Health

Plan, Inc*., 244 F.3d 708, 713 (9th Cir. 2001).  "Res judicata not only bars relitigation of claims

previously litigated, but also precludes claims that could have been brought in earlier

proceedings." *Arizona v. California*, 530 U.S. 392, 42 (2000); *see also Allen v. McCurry*, 449

U.S. 90, 94 (1980) (the doctrine of res judicata "precludes the parties or their privies from

relitigating issues that were or could have been raised in [a prior] action" following entry of "a

final judgment on the merits."); *Taboe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning

Agency*, 322 F.3d 1064, 1078 (9th Cir.2003) ("Newly articulated claims based on the same

nucleus of facts may still be subject to a res judicata finding if the claims could have been

brought in the earlier action."). The doctrine "'relieve[s] parties of the costs and vexation of

multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions,

encourage[s] reliance on adjudication.'"  *Dodd v. Hood River Cnty*., 59 F.3d 852, 863 (9th

Cir.1995) (quoting Allen, 449 U.S. at 94).

The criteria to determine whether successive lawsuits involve a single cause of action are

as follows:

(1) whether rights or interests established in the prior judgment would be
destroyed or impaired by prosecution of the second action; (2) whether
substantially the same evidence is presented in the two actions; (3) whether the

REPORT AND RECOMMENDATION - 11

two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Costantini v. Trans World Airline*, 681 F.2d 1199, 1201-02 (9th Cir.), *cert. denied*, 459 U.S. 1087 (1982) (*quoting Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir.1980)

1.     **Identity of Claims**

In his previous case, Mr. Troupe claimed that he was placed in the infirmary in retaliation for his active ligitation against the DOC.  Mr. Troupe alleged that he was moved to the infirmary on August 4, 2014 at the direction of Steven DeMars so that Mr. Troupe would be away from his witnesses in IMU and could no longer teach other inmates to file lawsuits, public disclosure requests, and witness statements.  Dkt. 26, at 2 in Case 14-5734.   In this case, Mr. Troupe claims that defendants violated his Eighth Amendment rights by placing him in the infirmary and that they violated his privacy rights by videotaping him in the shower and while using the toilet.  He also claims that Mr. DeMars had a separate objective in placing him in isolation because Mr. Troupe was researching DOC's history of PREA and sexual type problems with female staff; that he was placed in sensory deprivation with video cameras as punishment for writing kites and grievances telling defendants he was becoming more stressed and having thoughts of self-harm and that defendants left him in a situation so he could kill himself.  *See* Dkt. 8.  A review of the claims does not support a finding that they arise from the same nucleus of operative facts as the evidence needed to support Mr. Troupe's claims in this case (particularly as to the video taping and self-harm claims) is completely different than in the previous case.  Therefore, this requirement of res judicata is not met.

//

//

REPORT AND RECOMMENDATION - 12

1

2.      **Final Judgment on the Merits**

2

Mr. Troupe's prior case resulted in a final judgment on the merits when this Court

3

dismissed the claims by granting a motion for summary judgment.  Therefore, this requirement

4

of *res judicata* is met.

5

3.      **Identity or Privity of Parties**

6

7

For a judgment to have res judicata effect upon a subsequent action, the claim must be

8

"between the same parties or those in privity with them."  *Sunshine Anthracite Coal Co. v.*

9

*Adkins*, 310 U.S. 381, 402 (1940).  Privity is a legal conclusion which designates a person "so

10

identified in interest with a party to former litigation that he represents precisely the same right"

11

being adjudicated.  *In re Schimmels*, 127 F.3d 875, 881 (9th Cir.1997) (*quoting Southwest*

12

*Airlines Co. v. Texas Int'l Airlines, Inc.*, 546 F.2d 84, 94 (5th Cir.1977)).  Because "there is

13

privity between officers of the same government," a judgment in one suit between a party and a

14

representative of the United States precludes relitigation of the same issue between that party and

15

a different government officer in a later suit."  *Sunshine Anthracite Coal, Inc.*, 310 U.S. at 402–

16

03; *see also Nordhorn v. Ladish Co.*, 9 F.3d 1402, 1405 (9th Cir.1993) ("[W]hen two parties are

17

so closely aligned in interest that one is the virtual representative of the other, a claim by or

18

against one will serve to bar the same claim by or against the other.") (citation omitted); *see also,*

19

*Nelson v. Brown,* 2014 WL 1096189 at *7 (S.D. Cal. 2014)(warden named in habeas petition and

20

correctional officers named in civil rights action in privity).

21

22

Here, there is sufficient commonality of interests to apply res judicata against all

23

defendants in this case.  All defendants are correctional officials and have interests that are

24

closely aligned with Mr. DeMars in the prior case.  The parties in that prior case and in this case

25

26

REPORT AND RECOMMENDATION - 13

were represented by the Attorney General's Office, and DeMars adequately represented all of the current defendants' interests in the prior case.  Therefore, this res judicata prong is met.

However, because the identity of claims prong of the res judicata analysis is not met, the Court recommends denying defendants' motion on res judicata grounds.  Mr. Troupe's Eighth Amendment claims are analyzed below.

**B.    Personal Participation**

Personal participation is an essential element of a § 1983 claim. *See e.g*., *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978).  Supervisory officials cannot be held liable under a theory of respondeat superior.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2008).  To be liable under § 1983, a person must do an affirmative act, participate in another's affirmative act, or fail to perform an act that the person is legally required to do.  *Johnson v. Duffy*, 588 F.2d at 743-44.  Mere knowledge of a subordinate's unconstitutional actions is not enough to establish liability. *See Iqbal*, 556 at 677.

Mr. Troupe's complaint is generally devoid of any facts and instead relies upon a number of conclusory allegations.  He names fifteen individuals but uses conclusory allegations such as "each defendant" placed him in the infirmary or "each defendant" saw him self-harming on September 5, 2014.  *See e.g.,* Dkt. 8, at ¶ 8; Dkt. 34, at 12.   Other conclusory allegations have been proved as factually inaccurate and unsupported.  For example, Mr. Troupe alleges that all named defendants were involved in placing him in the infirmary.  However, the record reflects that not all defendants were involved in placing him in the infirmary. *See e.g.*, Dkt. 28-3, Exhibit 8, Robert Decl., at ¶ 2; Dkt. 28-3, Exhibit 9 (pp. 113-114), Declaration Nicole Buckingham, at ¶

REPORT AND RECOMMENDATION - 14

$2^4$.  On multiple occasions within his complaint, Mr. Troupe alleges that defendants were aware of certain things but provides no further facts to support these conclusory allegations.

To survive a motion for summary judgment, Mr. Troupe must provide more than conclusory allegations to explain how each defendant personally participated in any alleged unconstitutional conduct.  Mr. Troupe has provided specific, non-conclusory factual allegations related to the alleged constitution violations of Dean Mason[5], Steve DeMars, James Thompson, and Barbara Hutchinson.  In his response to the summary judgment motion, Mr. Troupe identifies one additional person with more specificity, former Superintendent Scott Russell.  Dkt. 34, at 10.  However, Mr. Russell's only involvement appears to have been that he responded to a grievance in October 2014.  *Id.*, at 35.  This conduct is insufficient to establish a constitutional violation, *see Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (inmates lack a seprate constitutional entitlement to a specific grievance procedure), and is insufficient to show Mr. Russell's involvement in the alleged unconstitutional actions.  The grievance response does not demonstrate that Mr. Russell was in any way involved in the September 4, 2014 incident.

Mr. Troupe's failure to provide specific evidence to show that ten of the fifteen named defendants participated in the alleged constitutional conduct, these ten defendants[6] should be dismissed on that basis alone.

---

[4] As previously noted, Ms. Buckingham was dismissed from this action on June 17, 2016, after it was made clear from her declaration that she never had contact with Mr. Troupe and Mr. Troupe was never on her caseload.  *See* Dkt. 28-3, Exhibit 9 (pp. 113-114), Declaration Nicole Buckingham, at ¶ 2; Dkt. 55 (Order of Dismissal).

[5] Although Mr. Troupe's complaint does not identify any specific, non-conclusory allegations related to Mr. Mason's participation, the evidence presented by defendants demonstrates that Mr. Mason was involved in placing Mr. Troupe in the infirmary.

[6] Donna Smith, Scott Russell, Eric Wirt, Lt. Martin, Scott Roberts, Patricia Paterson, Edward Woods, Crystal Jennings, Nancy Fernelious, and Donald Griffith.

REPORT AND RECOMMENDATION - 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**C.      Qualified Immunity**

Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In determining whether defendants are entitled to qualified immunity, the court makes a two-step inquiry.  First, the court must determine if plaintiff has alleged sufficient facts to show that defendants violated his constitutional rights.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).  Second, the court must determine if the right was clearly established.  *Id*.  This requires the court to determine if it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *Id*. at 202.  Plaintiff bears the burden of proving that the right was clearly established.  *See Davis v. Scherer*, 468 U.S. 183, 197 (1984).  Courts can address these issues in any order.  *Pearson*, 555 U.S. 223 (2009).  The Court reviews first whether Mr. Troupe has shown a violation of his Eighth Amendment rights.

The Eighth Amendment prohibits cruel and unusual punishment.  It is only "'the unnecessary and wanton infliction of pain' . . . (which) constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citing *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)).  The Eighth Amendment standard requires proof of both an objective and a subjective component.  *Hudson v. McMillian*, 503 U.S. 1 (1992).  If either of these components is not established, the court need not inquire as to the existence of the other.  *Helling v. McKinney*, 509 U.S. 25, 35 (1993).  The objective component of an Eighth Amendment claim requires that the deprivation must be "sufficiently serious."  *Farmer v.*

*Brennan*, 511 U.S. 825, 834 (1994).  The subjective component relates to the defendant's state of mind, and requires deliberate indifference.  *Farmer*, 511 U.S. at 834.

Mr. Troupe raised Eighth Amendment claims related to three incidents: (1) his initial placement in the infirmary; (2) the videotaping while in the infirmary; and (3) an incident on September 5, 2014.

### 1)       Placement in Infirmary

Although certain conditions of confinement can violate the Eighth Amendment, a prisoner must show an extreme deprivation to raise a viable conditions of confinement claims. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  Courts recognize that prison conditions can be harsh and restrictive because such conditions are part of the penalty that criminal offenders must pay for their offenses against society. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). An inmate must show that the challenged conditions constituted the denial of the minimal civilized measure of life's necessities. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

Mr. Troupe provides no evidence to show that his placement in the infirmary violated the Eighth Amendment.  Specifically, he has provided no evidence demonstrating how conditions in the infirmary differed from his placement in IMU or how these conditions denied him the minimal civilized measure of life's necessities. The record demonstrates that Mr. Troupe was placed in the infirmary because it was determined that the room was best suited for close observation and for the intervention strategies that had been developed in response to Mr. Troupe's behavioral issues.  Dkt. 28-3, Exhibit 4, Mason Decl., at ¶¶ 3-4.  Mr. Troupe complains that he was isolated from other offenders, but the record reflects that Mr. Troupe was normally housed in isolation as a result of his persistent misbehavior.  He also had regular contact with

medical staff.  Mr. Troupe has simply not demonstrated that the conditions in the infirmary were so restrictive that his placement there denied him life's necessities.

Based on the foregoing, the undersigned recommends that Mr. Troupe's Eighth Amendment claims relating to his placement in the infirmary be dismissed as he has not presented any facts to support the alleged violation of his Eighth Amendment rights.

### 2.    Videotaping Claim

Mr. Troupe contends that his Eighth Amendment rights were violated when defendants videotaped him showering and using the toilet while he was housed in the infirmary.  He claims that defendants "deliberately punished, humiliated, and sexually exploited [his] showering and using the toilet for their own sexual gratification."  *See, e.g.,* Dkt. 8, p. 6.

Although Mr. Turner brings this surveillance of his toilet and shower as a violation of his Eighth Amendment rights, the surveillance of individuals in prison is an expected and reasonable result of incarceration. Courts have repeatedly rejected such claims albeit under a Fourth Amendment analysis.  For example, prisoners' legitimate expectations of bodily privacy are extremely limited.  *Michenfelder v. Sumner*, 860 F.2d 328, 333-334 (9th Cir. 1988) (visual body-cavity searches of male inmates conducted within view of female guards and use of female guards for shower duty held constitutional; analyzed under Fourth and Eighth Amendments); *Grummett v. Rushen*, 779 F.2d 491, 492 (9th Cir.1985) (high potential for female guards to view male inmates disrobing, showering, and using toilet facilities did not render prison policies unconstitutional under Fourth Amendment); *Rickman v. Avaniti*, 854 F.2d 327, 327–28 (9th Cir.1988) (routine visual body-cavity searches of prisoners analyzed under Fourth Amendment).

Although the inmates' right to privacy must yield to the penal institution's need to maintain security, it does not vanish altogether.  *Cumbey v. Meachum*, 684 F.2d 712, 714 (10th

Cir.1982).  Thus, and assuming that videotaping Mr. Troupe in the shower and while he was

using the toilet impinged on his right to privacy, the claim is analyzed using *Turner v. Safley's*

rational relationship test to determine whether any such impingement was "reasonably related to

legitimate penological interests."

According to WCC Associate Superintendent Mason, there are cameras throughout the

facility for security purposes because WCC is a correctional facility.  The cameras in the

negative pressure room existed before Mr. Troupe was housed there, no additional cameras were

added, and that the video footage is kept for access if there is an incident.  Dkt. 28-3, Exhibit 4,

pp. 31-33, at ¶ 6.  Mr. Troupe filed a grievance stating that there were cameras covering the toilet

and shower areas of his cell.  He asked only that the camera covering the shower area be turned

off during the times that he showered.  That request was granted.  He did not appeal that

grievance.  In addition, there is no evidence that anyone ever viewed the video footage.  Dkt. 28-

3, Exhibit 4, Mason Decl., at ¶ 6; Dkt. 28-3, Exhibit 6, (pp. 67-69) Caldwell Decl., Attachment

C.  Moreover, Mr. Troupe concedes that during the time he was in the negative pressure room,

he was being monitored 24 hours per day.  Dkt. 34, at 8.  Presumably then, guards would have

seen him in various states of undress and while using the toilet.

Mr. Troupe contends that his Eighth Amendment rights were violated and he suffered

humiliation because he believes unidentified guards viewed videotapes of him using the toilet for

sexual gratification.  This contention is also without merit.

The Supreme Court has stated that only the " 'the unnecessary and wanton infliction of

pain' ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment."

*Whitley v. Albers*, 475 U.S. 312, 319 (1986) (*quoting Ingraham v. Wright*, 430 U.S. 651, 670

(1977)) (citation omitted). Moreover, "[i]t is obduracy and wantonness, not inadvertence or error

REPORT AND RECOMMENDATION - 19

1    in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments

2    Clause, whether that conduct occurs in connection with establishing conditions of confinement,

3    supplying medical needs, or restoring official control over a tumultuous cellblock." *Wilson v.*

4    *Seiter*, 501 U.S. 294, 299 (*quoting Whitley*, 475 U.S. at 319, 106 S.Ct. at 1084).  Thus, courts

5    considering a prisoner's claim must ask: 1) if the officials acted with a sufficiently culpable state

6    of mind; and 2) if the alleged wrongdoing was objectively harmful enough to establish a

7    constitutional violation.  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (*citing Wilson v. Seiter*, 501

8

9    U.S. 294, 298 (1991)).

10        Mr. Troupe's claim fails both the "subjective" and the "objective" components of the

11   Eighth Amendment analysis.  The record reflects that there are cameras throughout WCC as it is

12   a correctional institution.  Moreover, there is no evidence that any defendant was watching Mr.

13   Troupe with the intent of humiliating him.  Therefore, his contentions do little to prove that

14   defendants acted with a "sufficiently culpable state of mind."  *Wilson*, 501 U.S. at 298, 111 S.Ct.

15

16   at 2324.

17        Nor do his allegations establish conduct objectively harmful enough to establish a

18   constitutional violation.  Even taking Mr. Troupe's allegations as true, they do not rise to the

19   level of severe psychological pain required to state an Eighth Amendment claim.  *See, e.g.,*

20   *Somers v. Thurman,* 109 F.3d 614, 622 (9th Cir. 2006) (Eighth Amendment did not prohibit

21   female guards from performing visual body cavity searches on male inmates or watching male

22   inmates shower, despite one inmate's allegations that the guards pointed, joked, and "gawked" at

23   him; *see also, e.g., Grummett,* 779 F.2d at 494 n. 1 (prison's policy allowing female guards to

24   observe male inmates disrobing, showering, using the toilet, and being strip-searched, and

25

26

REPORT AND RECOMMENDATION - 20

1    allowing them to conduct pat-down searches including the groin area, did not amount to the

2    "type of shocking and barbarous treatment protected against by the [E]ighth [A]mendment").

3            Mr. Troupe's Eighth Amendment claims related to the videotaping should be dismissed.

4        **3.        September 4, 2014 Self-Harming Incident**

5            Plaintiff's assertions and the Defendants' response are set forth in detail in Section C

6    under Statement of Facts (page 5-9) and will not be repeated here.

7            Under 42 U.S.C. § 1983, to maintain an Eighth Amendment claim based on prison

8    medical treatment, an inmate must show "deliberate indifference to serious medical needs."

9    *Estelle v. Gamble*, 429 U.S. 97 (1976).   In the Ninth Circuit, the test for deliberate indifference

10   consists of two parts.  *McGuckin v. Smith*, 974 F.2d 1050 (9th Cir.1991), *overruled on other*

11   *grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir.1997) (en banc).  First, the

12   plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's

13   condition could result in further significant injury or the 'unnecessary and wanton infliction of

14   pain.'"  *Id*. at 1059 (*citing Estelle*, 429 U.S. at 104).   Second, the plaintiff must show the

15   defendant's response to the need was deliberately indifferent.  *Id*. at 1060.  This second prong—

16   defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a

17   purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm

18   caused by the indifference.  *Id*.  Indifference "may appear when prison officials deny, delay or

19   intentionally interfere with medical treatment, or it may be shown by the way in which prison

20   physicians provide medical care."  *Id*. at 1059 (*quoting Hutchinson v. United States*, 838 F.2d

21   390, 392 (9th Cir.1988)).  Yet, an "inadvertent [or negligent] failure to provide adequate medical

22   care" alone does not state a claim under § 1983.  *Id*. (*citing Estelle*, 429 U.S. at 105).  A prisoner

23   need not show his harm was substantial; however, such would provide additional support for the

1   inmate's claim that the defendant was deliberately indifferent to his needs.  *Id*. at 1060.  If the

2   harm is an "isolated exception" to the defendant's "overall treatment of the prisoner [it]

3   ordinarily militates against a finding of deliberate indifference."  *Id*. (citations omitted).

4          Claims arising out of an official's alleged failure to provide adequate medical care,

5   including suicide prevention and self-harm, has been held to the same standard.  *See Clouthier v.*

6   *Cty of Contra Costa*, 591 F.3d 1232, 1241 (9th Cir. 2010); *Lolli v. Cty of Orange*, 351 F.3d.

7   410, 418 (9th Cir. 2003); *Gibson v. Cty of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

8   Therefore, in order for defendants to succeed in their motion for summary judgment, they must

9   show that no reasonable jury could find that they (1) placed Mr. Troupe in conditions posing a

10  substantial risk of harm or (2) did so knowing and disregarding that risk.

11         Whether each of the defendants acted with deliberate indifference depends on what each

12  of them knew and what actions each of them took at the time of the alleged deprivation. *See*

13  *Clouthier*, 591 F.3d at 1244-49.

14         At issue is whether any defendant was deliberately indifferent to Mr. Troupe's alleged

15  commission of self-harm on September 4, 2014.  Defendants do not dispute that Mr. Troupe has

16  an extensive and well documented history of engaging in self-harming behavior.  *See, e.g.,* Dkt.

17  28-3, at 108, Attachment A to Roberts Decl.  The record reflects that medical staff repeatedly

18  saw Mr. Troupe and changed the dressing on his leg no less than *thirty-three* times in the less

19  than two months that Mr. Troupe was housed in the infirmary.  Dkt. 28-3, Exhibit 7, Turner

20  Decl., at ¶ 4.  For example, on August 6, 2014, when Mr. Troupe reopened the wound, staff

21  responded by placing him in the restraint chair, cleansing the wound, and attempting to place a

22  bandage on the wound.  *Id.*, Exhibit 7, Turner Decl., at ¶ 3 & Attachment C.

REPORT AND RECOMMENDATION - 22

As to the September 4, 2014 incident, defendants contend that Mr. Troupe's acts of self-harm were managed in accordance with his behavioral plan, monitored by mental health providers, and were not viewed as being consistent with a desire to commit suicide or a presenting a life-threatening situation.  Dkt. 28-3, Exhibit 8, Robert Decl., at ¶ 4.  Nurse Thompson states that when he looked in on Mr. Troupe on September 5, 2014 at 12:24 a.m., the dressing on Mr. Troupe's leg wound was still intact.  Dkt. 28-3, Exhibit 7, Attachment C ( 9/5/15 entry).  Mr. Troupe responds to this evidence by stating that the medical records and wound care flow sheet provided by defendants are forgeries.  Dkt. 34 at 10.

Mr. Troupe has failed to show that any of the defendants acted with deliberate indifference to an excessive risk of self-harm and he therefore has also failed to show any constitutional violation.  Accordingly, it is recommended that Mr. Troupe's Eighth Amendment claims relating to the September 4, 2014 self-harming incident be dismissed.

**D.    Injunctive Relief**

Injunctive relief is a drastic remedy that should only be granted sparingly.  *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008); *Rizzo v. Goode*, 426 U.S. 362, 378-79 (1976).  To be entitled to a permanent injunction, the party seeking the injunction must actually succeed on the merits.  *See e.g., Valley View Health Care Inc. v. Chapman*, 992 F. Supp. 2d 1016, 1042 (E.D. Cal. 2014).  Additionally, a party must show: (1) that the party has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

REPORT AND RECOMMENDATION - 23

1    Mr. Troupe is not entitled to injunctive relief because, as discussed above, he has failed to

2    show a triable issue on the merits of his claims.  Moreover, there is no evidence of any ongoing,

3    irreparable injury.  Mr. Troupe was transferred from the close observation cell in the infirmary

4    on September 30, 2014, so he is no longer subject to the challenged conditions of the infirmary.

5    There is also no evidence of any injury from the September 4th incident.  Accordingly, his claims

6    for injunctive relief should be dismissed.

7
8    **E.     Malicious / Frivolous Filing**

9    Defendants urge this court to find this action malicious and frivolous because Mr.

10   Troupe's claims have no basis in law or fact.

11   All parties instituting any civil action, suit or proceeding in a district court of the United

12   States, except an application for writ of habeas corpus, must pay a filing fee of $350.00[7].  *See* 28

13   U.S.C. § 1914(a).  An action may proceed despite a party's failure to prepay the entire fee only if

14   the party is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a).  *See Rodriguez v. Cook*,

15   169 F.3d 1176, 1177 (9th Cir.1999).  The Prison Litigation Reform Act (PLRA), 28 U.S.C. §

16   1915(g) provides that:

17
18              In no event shall a prisoner bring a civil action or appeal a judgment in a
19       civil action or proceeding under this section if the prisoner has, on 3 or more
         occasions, while incarcerated or detained in any facility, brought an action or appeal
20       in a court of the United States that was dismissed on the grounds that it was
         frivolous, malicious, or fails to state a claim upon which relief may be granted,
21       unless the prisoner is under imminent danger of serious physical injury.

22   28 U.S.C. § 1915(g).

23   Pursuant to Section 1915, notwithstanding any filing fee, or any portion thereof, that may

24   have been paid, the court shall dismiss the case at any time if the court determines that … "the

25

26   ───────────────
[7] Parties not granted IFP are obligated to pay an additional $50.00 administrative fee for a total filing fee of $400.00.

REPORT AND RECOMMENDATION - 24

action is frivolous or malicious…" or "fails to state a claim upon which relief could be granted." 28 U.S.C. § 1915(e)(2)(a).  A case is frivolous if it has no basis in law or fact.  *See Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005).  Malicious has been defined to include an action that is "plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Abdul-Akbar v. Dep't of Corr.*, 910 F. Supp. 986, 999 (D. Del. 1995).  Courts have read related situations into § 1915(g) when a claim is baseless, without merit, or an abuse of the judicial process. *See Smith v. Duke*, 296 F. Supp. 2d 965, 966 (E.D. Ark. 2003). The phrase "fails to state a claim on which relief may be granted," as used elsewhere in § 1915, "parallels the language of Federal Rule of Civil Procedure 12(b)(6)." *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir.1998) (interpreting § 1915(e)(2)(B)(ii) and employing the same de novo standard of review applied to Rule 12(b)(6) motions).

This court is mindful that Mr. Troupe was warned about potentially abusive litigation and that any further complaints that are filed but lack merit will be considered additional evidence of malicious abuse of process. *Troupe v. Tucker,* Case No. C14-5650 BHS-JRC (Dkt. 27, at p. 2).

Where an order explicitly states summary judgment is proper because the case is frivolous, malicious, or fails to state a claim (one of the grounds enumerated by the PLRA), the dismissal counts as a strike. *El-Shaddai v. Zamora United States Court of Appeals*, --- F.3d ---- 2016 WL 4254980 (9th Cir., August 12, 2016).  Here, however, summary judgment is not granted on an enumerated PLRA ground.  Rather, summary judgment is based on the evidence presented by defendants which shows that they have not violated Mr. Troupe's constitutional rights.

Based on the foregoing, the undersigned declines to recommend that the action be dismissed as malicious or frivolous.

REPORT AND RECOMMENDATION - 25

**CONCLUSION**

The undersigned recommends that Defendants' motion for summary judgment (Dkt. 28) should be **GRANTED** and all claims against them **dismissed with prejudice**.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the Jackson for consideration on **October 7, 2016,** as noted in the caption.

**DATED** this __19th__ day of September, 2016.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 26